**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | |
|---|---|
| **PRO-FOOTBALL, INC.,** | |
| **Plaintiff,** | **Civil Action No.: 1:14-cv-1043-GBL-IDD** |
| **v.** | |
| **AMANDA BLACKHORSE, MARCUS BRIGGS-CLOUD, PHILLIP GOVER, JILLIAN PAPPAN and COURTNEY TSOTIGH,** | |
| **Defendants.** | |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS**

In June 2014, the Trademark Trial and Appeal Board ("TTAB"), a component of the

United States Patent and Trademark Office ("USPTO"), decided that the USPTO acted contrary

to federal trademark law when it issued six trademark registrations to Plaintiff Pro-Football, Inc.

("PFI"), the owner of the Washington NFL team.  The TTAB concluded that the marks were not

eligible for registration under 15 U.S.C. § 1502(a) because they contain matter that "may

disparage" Native Americans.[1]  Accordingly, the TTAB scheduled the registrations for

---

[1] The trademarks contain the term "redskin," an ethnic slur used to refer to Native Americans.
*See, e.g.*, *The American Heritage Dictionary of the English Language*,
http://ahdictionary.com/word/search.html?q=redskin (accessed September 17, 2014) ("Offensive
Slang. Used as a disparaging term for a Native American"); *Merriam-Webster Online
Dictionary*, http://merriam-webster.com/dictionary/redskin (accessed September 17, 2014)
("usually offensive: American Indian"); *Dictionary.com Unabridged. Based on the Random
House Dictionary*, http://dictionary.reference.com/ browse/redskin (accessed September 17,
2014) ("Slang: Often disparaging and offensive. A North American Indian"); *Oxford*

(Continued)

cancellation by the Director of the USPTO.  The TTAB acted after five Native American individuals, the defendants in this action ("Blackhorse Defendants"), petitioned it to cancel the registrations.

PFI could have appealed to the Federal Circuit, where the USPTO could have defended the TTAB decision, but PFI declined to do so.  *See* 15 U.S.C. § 1071(a).  Instead, PFI filed this civil action against the Blackhorse Defendants, under 15 U.S.C. § 1071(b)(4).

PFI's dispute, however, is with the USPTO, not with the Blackhorse Defendants.  PFI alleges that the TTAB – not the Blackhorse Defendants – acted unlawfully by scheduling its registrations for cancellation.  Likewise, PFI seeks relief only against the USPTO – a declaratory judgment to prevent the Director of the USPTO from carrying out the cancellations.  PFI alleges no conduct on the part of the Blackhorse Defendants other than filing a petition with the TTAB. It does not allege that they acted unlawfully or tortiously.  Nor does PFI allege that the Blackhorse Defendants claim any interest in PFI's trademarks or in similar trademarks.  This lawsuit will not affect the legal rights or obligations of the Blackhorse Defendants in any way. As a result, the Complaint should be dismissed for the following two reasons:

- The Blackhorse Defendants are not "parties in interest" who may be sued under 15 U.S.C. § 1071(b)(4); and

---

(Continued)

*Dictionaries*, http://oxforddictionaries.com/us/ definition/american_english/redskin (accessed September 17, 2014)("dated, offensive: An American Indian"); *The New Lexicon Webster's Dictionary of the English Language* (vol. 2, Lexicon Publications, Inc., 2004) ("North American Indian (usually construed as offensive)"); http://vocabulary.com/dictionary/Redskin (accessed September 17, 2014) ("(slang) offensive term for Native Americans"); http://education.yahoo.com/reference/ dictionary/entry/redskin (accessed September 17, 2014) ("Offensive Slang. Used as a disparaging term for a Native American").

- This Court lacks subject matter jurisdiction because there is no "Case or Controversy" under Article III of the Constitution as between PFI and the Blackhorse Defendants.

## BACKGROUND

### A.   Trademark Registrations and the USPTO/TTAB

A trademark is a word, name, symbol or combination thereof that is used in commerce to identify and distinguish the goods or services of one entity from the goods or services of others. 15 U.S.C. § 1127; *Microstrategy, Inc. v. Motorola, Inc.,* 245 F.3d 335, 341 (4th Cir. 2001). Trademark rights arise from use of a mark in commerce; government action is not required to create protectable rights.  *See id.; see also Virginia Polytechnic Inst. v. Hokie Real Estate*, 813 F. Supp. 2d 745, 756 (W.D. Va. 2011).

The Lanham Act, 15 U.S.C. §§ 1501 *et seq*., establishes a mechanism for owners of trademarks to obtain federal registration for their marks.  Registration creates certain evidentiary presumptions and additional remedies in trademark enforcement actions, among other benefits, that are not available for unregistered trademarks.  *See* Complaint ("Compl.") §§ 40-48.[2]  To be eligible for registration, a trademark must satisfy the criteria of Section 2 of the Lanham Act, 15 U.S.C. § 1052.  These criteria include, among others, that the mark not consist of merely descriptive or generic matter, not comprise wholly functional matter, not so resemble a third

---

[2] The benefits of registering a mark include: (i) registration serves as *prima facie* evidence of the validity of a mark, and of the registrant's ownership of and exclusive right to use the mark (15 U.S.C. §§ 1057(b), 1115(a)) and after five years, these presumptions become "incontestable" (*id.* §§ 1065, 1115(b))); (ii) in a federal infringement action, the owner of a registered mark may be able to recover treble profits and attorneys' fees (*id.* § 1117); (iii) registration of a mark is a factor to consider in whether a mark is "famous" and therefore enjoys protection under the Lanham Act's anti-dilution provision (*id.* § 1125(c)); (iv) a registration may be filed with the U.S. Customs Service to prevent importation of infringing foreign goods (*id.* § 1124); and (v) the owner of a registered trademark can use the ® symbol (*id.* § 1111).

party's mark as to likely cause consumer confusion, and – as relevant here – not contain matter that "may disparage" persons or "bring them into contempt or disrepute." 15 U.S.C. § 1052.

A trademark owner seeking registration must submit an application to the USPTO, which is reviewed by a USPTO examining attorney. 15 U.S.C. § 1051. The examining attorney is required to refuse registration of applications that do not meet the registration criteria of 15 U.S.C. § 1052. *See* 15 U.S.C. § 1062(b).

If an examining attorney refuses an application, the applicant may ask the agency to reconsider by appealing to the TTAB. *See* 15 U.S.C. § 1070; Trademark Manual of Examining Procedure ("TMEP") §§ 705, 714, 715.03.[3] As noted, the TTAB is a component of the USPTO, and consists of the Director of the USPTO, the Commissioner for Patents, the Commissioner for Trademarks, and administrative judges appointed by the Director. 15 U.S.C. § 1067(b). The TTAB sits in three-member panels to make its decisions. 37 C.F.R. §§ 2.129(a) & 2.142(e)(1).

The Lanham Act also creates a process for competitors and others to ask the USPTO to review an examining attorney's decision to issue a registration that they believe is contrary to 15 U.S.C. § 1052. For example, after the USPTO publishes notice (under 15 U.S.C. § 1062(a)) that a trademark has been approved for registration by an examining attorney but before the registration is final, "[a]ny person who believes he would be damaged by the registration" may file an opposition to prevent the registration from being issued. 15 U.S.C. § 1063. Likewise – as occurred here – "any person who believes that he is or will be damaged" by a registration that has already been issued may petition the USPTO to cancel the registration. 15 U.S.C. § 1064. The Lanham Act provides that the TTAB shall review oppositions and petitions to cancel

---

[3] The TMEP is available on the USPTO's web site, www.uspto.gov.

registrations on behalf of the USPTO.  15 U.S.C. § 1067(a) ("In every case of … opposition to registration … or application to cancel the registration of a mark, the Director [of the USPTO] shall give notice to all parties and shall direct a Trademark Trial and Appeal Board to determine and decide the respective rights of registration.").

### B.    The TTAB Decides That The USPTO Must Cancel PFI's Registrations Because Its Marks Are Disparaging.

Between 1967 and 1990, the USPTO granted registrations to six trademarks owned by PFI that contain the term "Redskins" or a derivation of that term.  Compl. ¶ 21.  In 1992, pursuant to 15 U.S.C. § 1064, Suzan Shown Harjo and six other Native American leaders filed a petition with the TTAB to cancel the registrations.  *Id.* ¶ 16.  In 1999, after reviewing the evidence submitted by PFI and the *Harjo* petitioners, the TTAB decided that the USPTO should never have issued the registrations in the first place because, contrary to 15 U.S.C. § 1052, PFI's trademarks contain matter (*i.e.*, the term "redskins") that "may disparage" Native Americans or "bring them into contempt or disrepute."  *Harjo v Pro-Football, Inc*., 50 U.S.P.Q.2d 1705, 1999 WL 375907, at *48 (T.T.A.B. 1999); Compl. ¶ 17.

PFI then filed a civil action in the United States District Court for the District of Columbia, challenging the TTAB's *Harjo* decision.  The *Harjo* federal litigation featured two trips to the D.C. Circuit, which ultimately held that the petition was barred by laches because the *Harjo* petitioners waited too long after turning 18 years old to file their petition.  *See Pro-Football, Inc. v. Harjo*, 415 F.3d 44, 49-50 (D.C. Cir. 2005) (holding that *Harjo* petition was barred by laches as to six petitioners and remanding for further consideration of laches as to the remaining petitioner); *Pro-Football, Inc. v. Harjo*, 565 F.3d 880 (D.C. Cir. 2009) (final petitioner also subject to laches), *cert. denied*, 558 U.S. 1025 (2009); Compl. ¶¶ 19, 25.

In 2006, while the *Harjo* federal litigation was pending, five younger Native Americans - - Amanda Blackhorse, Marcus Briggs-Cloud, Phillip Gover, Jillian Pappan and Courtney Tsotigh (the "Blackhorse Defendants")[4] – filed a new petition with the TTAB to cancel PFI's registrations, *Blackhorse et al. v. Pro-Football, Inc.*, 111 U.S.P.Q.2d 1080, 2014 WL 2757516 (T.T.A.B. 2014). The TTAB suspended action on *Blackhorse* until the federal proceedings in *Harjo* concluded. Compl. ¶ 22, 27.

On June 18, 2014, in *Blackhorse*, "[f]ollowing several years of discovery, motion practice, submissions of evidence, final briefing, and oral argument," the TTAB once again concluded that the USPTO acted contrary to law between 1967 and 1990 when it granted registrations to PFI for the six trademarks that contain "Redskins" or a derivative. Compl. ¶ 33. As it had in 1999 in *Harjo*, the TTAB found that "redskin" was an ethnic slur during the relevant time periods, and that the trademarks were ineligible for registration because they contain matter that "may disparage" Native Americans or "bring them into contempt or disrepute." *Blackhorse*, 111 U.S.P.Q.2d 1080, 2014 WL 2756516, at *1 (T.T.A.B. 2014). Accordingly, the TTAB scheduled the registrations for cancellation by the USPTO. Compl. ¶ 33.

PFI's trademark registrations have not yet been cancelled. Cancellation requires a separate action by the Director of the USPTO. The Director does not cancel a registration until

---

[4] Ms. Blackhorse is a member of the Navajo Nation; Mr. Briggs-Cloud is a member of the Muscogee Nation of Florida; Mr. Gover is a member of the Paiute Indian Tribe of Utah; Ms. Pappan is a member of the Omaha Tribe of Macy, Nebraska; and Ms. Tsotigh is a member of the Kiowa Tribe of Oklahoma.

any ensuing federal action has been resolved (or until after the time to file a federal action has expired).[5]

PFI contends that if the Director cancels its registrations, it will lose the benefits of federal registration.  *See* Compl. ¶¶ 40-48.  PFI does not contend that it will forfeit its common law rights to bring infringement and other enforcement actions to protect its unregistered trademarks after its federal registrations are cancelled.  *See id*.[6]

### C.     PFI Files This Action.

PFI had a right to appeal the TTAB decision to the United States Court of Appeals for the Federal Circuit, but opted not to do so.  *See* 15 U.S.C. § 1071(a).

Instead, on August 14, 2014, PFI filed this civil action, purportedly pursuant to 15 U.S.C. § 1071(b).  Compl. § 2.  Under § 1071(b), following a TTAB proceeding that involved adverse parties, a party "dissatisfied" with the TTAB decision may file a new civil action against "the party in interest as shown by the records of the United States Patent and Trademark Office."  15 U.S.C. §§ 1071(b)(1) &(4).  An action under § 1071(b) is not an appeal, but a new civil action in which the parties may introduce evidence with the district court conducting a *de novo* trial on the same issues raised in the TTAB proceeding.  Compl.  ¶ 56; *see also Swatch AG v. Beehive Wholesale, LLC*, 739 F.3d 150, 156 (4th Cir. 2014) (explaining that actions under 15 U.S.C. §

---

[5] *See* Trademark Trial and Appeal Board Manual of Procedure ("TBMP") § 806, available at www.uspto.gov.

[6] To the contrary, according to a statement issued by PFI, the TTAB decision "simply addresses the team's federal trademark registrations and the team will continue to own and be able to protect its marks without the registrations."  Bart Hubbach, "Trademark Cancellation a Major Blow to Redskins Nickname," New York Post (June 18, 2014), available at http://nypost.com/2014/06/18/trademark-cancellation-a-crushing-blow-to-redskins-nickname.

1071(b) are not appeals, but are new civil actions).  The Director is not made a defendant to an action under 15 U.S.C. § 1071(b)(4).[7]

Here, PFI does not allege any wrongdoing on the part of the Blackhorse Defendants.  PFI does not allege that they breached a contract, committed a tort, or violated any law.  Instead, PFI's allegations are directed solely against the USPTO and PFI seeks relief only against the USPTO:

- Counts I and II allege that the cancellation by the USPTO would be contrary to the Lanham Act because the trademarks allegedly do not disparage Native Americans or bring them into contempt or disrepute.   Compl. ¶¶ 130-33.

- Counts III and IV allege that cancellation by the USPTO would violate the Constitution either because 15 U.S.C. § 1502(a) violates the First Amendment or because it is unduly vague.  *Id.* ¶¶ 134-39.

- Counts V and VI allege that cancellation by the USPTO would violate the Fifth Amendment either as a deprivation of property without due process or as a taking without compensation.  *Id.* ¶¶ 140-46.

- Count VII alleges that cancellation by the USPTO would violate the Lanham Act because the TTAB should not have entertained the *Blackhorse* petition because it was allegedly not timely filed.  *Id.* ¶¶ 147-48.

For relief, PFI seeks declaratory judgment that the TTAB's action was either contrary to the Lanham Act or unconstitutional, and an order preventing the USPTO from carrying out the scheduled cancellation.  *Id*. at 34-35 (Prayer For Relief).

---

[7] In addition, following TTAB decisions that do not involve adverse parties, a "dissatisfied" party may file a civil action against the Director of the USPTO.  *See* 15 U.S.C. § 1701(b)(1), (3). This might occur, for example, if the TTAB affirms the decision of an examining attorney to refuse registration of a mark.  *See, e.g., Shammas v. Rea*, 978 F. Supp. 2d 599 (E.D. Va. 2013).

## **ARGUMENT**

Although PFI and the *Blackhorse* Defendants sharply disagree over the USPTO's decision to cancel PFI's registrations, they have no justiciable dispute.  PFI does not allege a trademark ownership or infringement dispute or assert any other cause of action against the Blackhorse Defendants.  Rather, PFI's dispute is with the USPTO.  PFI alleges that it is the USPTO – not the Blackhorse Defendants – that violated the Lanham Act and the Constitution, and the relief PFI seeks is to prevent USPTO action.  PFI seeks no relief against the Blackhorse Defendants; this action will not affect any of the Blackhorse Defendants' legal or economic interests, regardless of its outcome.

As a result, this action should be dismissed because the Blackhorse Defendants are not "parties in interest" against whom an action may be filed under 15 U.S.C. § 1071(b)(4).  In addition, there is no Article III "Case or Controversy" between PFI and the Blackhorse Defendants and this action should be dismissed for lack of jurisdiction.

PFI could have avoided these problems by appealing to the Federal Circuit under 15 U.S.C. § 1071(a), where the USPTO could have defended its decision on appeal.  *See, e.g., In re Bose Corp.*, 180 F.3d 1240, 1243 (Fed. Cir. 2009).  PFI apparently made a strategic decision not to appeal to the Federal Circuit, presumably because that Court has already rejected PFI's Constitutional arguments.  *See In re Fox*, 702 F.3d 633, 634 (Fed. Cir. 2012) ("Because a refusal has no bearing on the applicant's ability to use the mark, we have held that [15 U.S.C.] § 1052(a) does not implicate the First Amendment rights of trademark applicants"); *Georgalis v. U.S. Patent and Trademark Office*, 296 F. Appx. 14, 16 (Fed. Cir. 2008) (holding that USPTO's cancellation and refusal to reinstate patent was not a Taking under the Fifth Amendment); *In re Boulevard Entm't, Inc.*, 334 F.3d 1336, 1343 (Fed. Cir. 2003) (rejecting First Amendment challenge); *In re Mavety Media Gr. Ltd.*, 33 F.3d 1367, 1374 (Fed. Cir. 1994) (same); *In re*

*McGinley*, 660 F.2d 481, 484-85 (C.C.P.A. 1981) (rejecting argument that "scandalous" as used in 15 U.S.C. § 1052(a) was unconstitutionally vague).

Whatever PFI's reasons for avoiding the Federal Circuit, this action should be dismissed.

**I.      The Complaint Should Be Dismissed Because The Defendants Are Not "Parties In Interest" Under 15 U.S.C. § 1071(b)(4).**

This action should be dismissed for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) or, alternatively, for failure to state a claim under Rule 12(b)(6).  An action under 15 U.S.C. § 1071(b)(4) may be brought only against the "party in interest as shown by the records of the United States Patent and Trademark Office," but the Blackhorse Defendants are not "parties in interest."

Indeed, the Blackhorse Defendants have no economic or legal interest in the subject matter of this lawsuit.  The Court's ruling in this case will not affect any of their economic or legal rights or obligations.  They stand to gain nothing or lose nothing.  PFI has not alleged that the Blackhorse Defendants claim an ownership interest in PFI's trademarks or in any other potentially infringing trademarks.  Although the Blackhorse Defendants might be pleased or disappointed with the outcome of this case, that does not make them "parties in interest."

A patent case, *3V, Inc. v. CIBA Specialty Chems. Corp.*, 587 F. Supp. 2d 641 (D. Del. 2008), illustrates that the Blackhorse Defendants are not "parties in interest."  *See Swatch AG v. Beehive Wholesale, LLC*, 739 F.3d 150, 155-56 (4th Cir. 2014) (using case law interpreting patent law to interpret similar provisions of the Lanham Act).    In *3V*, the Board of Patent Appeals and Interference (now known as the Patent Trial and Appeals Board) decided that CIBA was the first to invent an invention claimed in both CIBA's and 3V's patents, but that certain claims in CIBA's patent were unpatentable.  *Id*. at 642.  CIBA and 3V were both "dissatisfied"

with different aspects of the Patent Board's decisions, and each brought action under 35 U.S.C. §

146, the patent parallel to 15 U.S.C. § 1071(b)(4).

3V subsequently disclaimed all ownership rights to its potentially conflicting patent and

moved to dismiss; CIBA opposed dismissal because it continued to seek reversal of the Patent

Board's ruling that some of its claims were unpatentable and wanted a defendant against whom it

could litigate this issue.  The Court, however, dismissed the action for lack of a Case or

Controversy under Article III, as a result of 3V's disclaimer of interest in the patent.  In its

decision, the Court explained that to be a "party in interest" under 35 U.S.C. § 146, a party must

have an actual economic interest in the patent or an allegedly infringing patent:

> [35 U.S.C.] § 146 provides that 'suit may be instituted against the party in
> interest'….  Referring to parties "in interest," the language of the statute
> suggests that parties to a § 146 action must have some articulable reason
> to participate in the dispute….  3V's disclaimer has resulted in dedication
> of all interest in the patent to the public.  Thus, there is no possibility that
> 3V retained some unknown equitable interest that would justify it
> remaining in the case as a 'proper' party….

*Id*. at 647.  Likewise, although PFI seeks reversal of the TTAB's ruling that its trademarks are

unregistrable, it cannot maintain an action under 15 U.S.C. § 1071(b)(4) against the Blackhorse

Defendants who have no actual or alleged economic or legal interest in the trademarks.  *See also*

*Consumer Watchdog v. Wis. Alumni Research Found.*, 753 F.3d 1258 (Fed. Cir. 2014) (holding

that consumer group, with no economic or legal interest in disputed patent, lacked a sufficient

interest to litigate in federal court the PTAB's decision not to invalidate a patent);  *Nachtman v.*

*Toulmin*, 196 F. Supp. 367, 369 (S.D. Ohio 1961) (holding that "party in interest as shown by the

records of the United States Patent and Trademark Office" refers to the owner or assignee of the

patent at issue or a similar patent, and not the adverse party to proceedings before the Board of

Patent Interferences (precursor to the PTAB)).

Similarly, in *Hans C. Bick, Inc. v. Watson*, 253 F.2d 344 (D.C. Cir. 1958), the Court found that parties with no interest in a trademark whose registration was cancelled were not "parties in interest" even though they had filed the petition to cancel.  In *Bick*, three companies successfully petitioned the Commissioner of Patents to cancel the registration of a certain trademark-owner (Bick).  Dissatisfied with the Commissioner's decision, Bick filed an action in district court against the Commissioner under 35 U.S.C. § 145 (1952), the precursor to current-day 15 U.S.C. § 1071(b)(3).[8]  *Bick*, 253 F.2d at 344.  The Commissioner moved to dismiss, arguing that Bick should instead have brought action against the cancellation petitioners under 35 U.S.C. § 146 (1952), the precursor to current-day 15 U.S.C. § 1071(b)(4).  *Id.* at 345.

The D.C. Circuit disagreed.  It held that Bick could not have brought action against the cancellation petitioners because they were not a "party in interest" under 35 U.S.C. § 146 (1952). The Court explained that the dispute over whether Bick's trademark is eligible for registration is a dispute between Bick and the agency:

> [T]he only issue presented by the Commissioner's decision and the complaint is whether the initial registrations of [Bick's] mark were erroneously granted as a matter of law…. Such a dispute clearly is primarily between [Bick] and the Commissioner….

---

[8] At the time of *Bick*, the Lanham Act provided that a party to a cancellation proceeding dissatisfied with a decision by the Commissioner could file an appeal with the Court of Customs and Patents (predecessor to the Federal Circuit) or could file a civil action in district court under 35 U.S.C. §§ 145 and 146 (1952) against either the Commissioner (§ 145) or "the party in interest as shown by the records of the Patent Office at the time of the decision complained of" (§ 146).  *See* 15 U.S.C. § 1071 (1952) (citing and incorporating 35 U.S.C. §§ 145 and 146 (1952) (creating civil action to challenge patent rulings of the Patent Office)).  In 1962, Congress struck 15 U.S.C. § 1071 and replaced it with language substantively similar to today's version.  *See* Pub. Law 87-772 § 12 (1962).  Thus, 35 U.S.C. §§ 145 and 146 (1952) are precursors to current 15 U.S.C. § 1071(b).

*Id*. at 346.  And further, the Court explained, a party dissatisfied with a cancellation decision could bring action under 35 U.S.C. § 146 (1952) (precursor to current 15 U.S.C. § 1071(b)(4)) only against "the party interest," but the "[t]he petitioners for cancellation have never used or registered [Bick's] mark or a mark claimed to be similar." *Id*.   As with the *Bick* petitioners, the *Blackhorse* Defendants "have never used or registered [PFI's] mark or a mark claimed to be similar," and accordingly are not "parties in interest."

      Ordinarily, the adverse parties in an opposition or cancellation proceeding before the TTAB are two businesses claiming rights to the same or similar trademarks.  Thus, when a party dissatisfied with a decision of the TTAB brings actions under 15 U.S.C. § 1071(b)(4), it is usually involved in a dispute with a business that uses a similar trademark, with the parties often joining claims for trademark infringement, unfair competition and other causes of action.  *See, e.g.*, *Swatch*, 739 F.3d at 154 (noting that plaintiff joined claims for trademark infringement and unfair competition against defendant); *Zao Odessky Konjatschnyi Zawod v. SIA "Baltmark Invest*," No. 1:12cv515 (JCC/JDD), 2014 WL 785295 (E.D. Va. Feb. 21, 2014) (describing dispute between two claimants to same or similar marks); *Vaad L'Hafotzas Sichos, Inc. v. Kehot Publication Soc'y,* 935 F. Supp. 2d 595 (E.D.N.Y. 2013) (same); *The Coryn Group II, LLC v. O.C. Seacrets, Inc.*, 868 F. Supp. 2d 468 (D. Md. 2012) (same); *Tovaritch Spirits Int'l SA v. Luxco, Inc.*, No. 4:11CV950JCH, 2012 WL 6652949 (E.D. Mo. Dec. 21, 2012) (same).  Under such typical circumstances, it is clear that the other entity using a similar and possibly infringing trademark is a "party in interest."  This case is not the ordinary case.  Here, the petition to cancel was not filed by a business with a trademark dispute, but by five individuals who sought cancellation on public interest grounds based on a "sparingly used statutory provision … which is rarely invoked to cancel any registered trademarks…."  Compl. ¶ 3.

Accordingly, under the facts and circumstances of this case, the Blackhorse Defendants are not "parties in interest" under 15 U.S.C. § 1071(b)(4), and the statute therefore does not give PFI the right to file suit against them.[9]

## II.     This Court Lacks Jurisdiction Because There Is No "Case or Controversy."

Even if the Blackhorse Defendants are considered "parties in interest" under 15 U.S.C. § 1071(b)(4), this action should be dismissed because there is no "Case or Controversy" as required for this Court to exercise jurisdiction under Article III of the Constitution.  Rather, PFI's "Case or Controversy" is with the USPTO.  As noted, PFI alleges that the USPTO acted unlawfully under the Lanham Act and the Constitution, and PFI seeks declaratory judgment relief directed towards the USPTO only.  PFI seeks no relief against the Blackhorse Defendants, and this action does not implicate any legal interests of the Blackhorse Defendants.

"Article III of the Constitution confines the judicial power of federal courts to deciding actual 'Cases' or 'Controversies.'"  *Hollingsworth v. Perry*, 133 S. Ct. 2652, 2656 (2013). Absent a case or controversy, the Court lacks jurisdiction and must dismiss.  In a declaratory judgment action such as this one, to satisfy the "actual controversy" requirement, a court must determine "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549

---

[9] Whether PFI's failure to file suit against a "party in interest" is a jurisdictional failure or a failure to state a claim, the result is the same, dismissal.  *See Morrison v. Nat'l Australia Bank, Ltd.*, 561 U.S. 247, 254 (2010).  If viewed as a failure to state a claim, then the following "Case or Controversy" argument should be considered first.  *See Steel Co. v. Citizens For A Better Environment*, 523 U.S. 83, 98-102 (2010) (stating that jurisdictional issues should be considered first in a motion to dismiss).

U.S. 118, 127 (2007).  PFI bears "the burden of establishing the existence of an actual case or controversy." *Cardinal Chem. Co. v. Morton Int'l,* 508 U.S. 83, 95 (1993).

To satisfy this burden, PFI must show that "the dispute 'is definite and concrete, *touching the legal relations of parties having adverse legal interests*.'" *White v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 913 F.2d 165, 167 (4th Cir. 1990) (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-41 (1937)) (emphasis added).  "The presence of a disagreement, however sharp and acrimonious it may be, is insufficient by itself to meet Art. III's requirements."  *Diamond v. Charles*, 476 U.S. 54, 62 (1986).  Both parties must have a judicially cognizable interest in the disagreement.  *See id*. at 56, 64-69 (pediatrician lacked sufficient interest to defend constitutionality of state anti-abortion laws).  Here, the dispute does not touch upon the "legal relations" of PFI and the Blackhorse Defendants, and they do not have "adverse legal interests." *White*, 913 F.2d at 167.  PFI and the Blackhorse Defendants have no legal relations with one another, just a disagreement as to whether PFI's trademarks may disparage Native Americans.

The Federal Circuit's recent decision in *Consumer Watchdog v. Wis. Alumni Research Found.*, 753 F.3d 1258 (Fed. Cir. 2014) ("*WARF*"), makes plain that this action does not present a case or controversy.  In *WARF*, a consumer group requested reexamination by the Patent Trial and Appeal Board of a patent for embryonic stem cells owned by the Wisconsin Alumni Research Foundation, seeking to cancel the patent on grounds that it was not patentable (analogous to the Blackhorse TTAB petition to cancel PFI's registrations as ineligible for registration).  The PTAB disagreed with the consumer group, finding patentability.  *See* 753 F.3d. at 1259.  The consumer group appealed to the Federal Circuit, which then dismissed the appeal for lack of jurisdiction.  The Court ruled that there was no Article III case or controversy due to the consumer group's lack of legal or economic interest in the patent.  *See id*. at 1261-62.

The consumer group did "not allege that it is engaged in any activity involving human embryonic stems cells that could form the basis for an infringement claim. It [did] not allege that it intends to engage in such activity. Nor [did] it allege that it is an actual or prospective licensee, or that it has any other connection to the … patent or the claimed subject matter." *Id*. at 1261. Rather, the consumer group raised the issue with the PTAB solely on public interest grounds, concerned that the patent could deter scientific and medical stem cell research. *Id*. at 1260. Accordingly, the Federal Circuit ruled that consumer group did not suffer a sufficient injury to a legally protectable interest for it to have standing to appeal. *See id*. at 1261-63.

Just as the consumer group in *WARF* sought cancellation of a patent on public interest grounds, the Blackhorse Defendants sought to cancel trademark registrations for public interest reasons. The Blackhorse Defendants' legal and economic interests are not affected by the registration cancellations and they will not be affected by this litigation. Moreover, it makes no difference that the consumer group in *WARF* was seeking federal court review, while the Blackhorse Defendants have been hauled involuntarily into Court. There is no "Case or Controversy" if a party lacks a stake in the outcome, regardless of which side of the "v." it is found. If there is no case or controversy when Party "A" sues Party "B" over a given matter, there is no case or controversy if Party "B" were to sue Party "A" over the same matter. Like plaintiffs, defendants must also have a cognizable interest to create a case or controversy. "Standing to sue or defend is an aspect of the case or controversy requirement." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 64 (1997). And, "standing to defend on appeal in the place of an original defendant, no less than standing to sue, demands that the litigant possess a direct stake in the outcome." *Id*. (internal quotation omitted); *see also Diamond*, 476 U.S. at 56 ("Because a private party whose own conduct is neither implicated nor threatened by a criminal

statute has no judicially cognizable interest in the statute's defense, we dismiss the appeal for want of jurisdiction").

Indeed, in *3V, Inc. v. CIBA Specialty Chems. Corp.*, 587 F. Supp. 2d 641 (D. Del. 2008), the parties were aligned in the same way as PFI and the Blackhorse Defendants, and the Court dismissed due to lack of a Case or Controversy. As summarized above, in *3V*, the Board of Patent Appeals and Interference (now the PTAB) decided that CIBA was the first to invent an invention claimed in both CIBA's and 3V's patents, but that certain claims in CIBA's patent were unpatentable. *Id*. at 642. 3V and CIBA then filed action against each other under 35 U.S.C. § 146 seeking to overturn the parts of the Patent Board's decision with which they were "dissatisfied." Thereafter, 3V disclaimed all interests in its allegedly infringing patent and moved to dismiss for lack of a Case or Controversy. CIBA opposed the motion to dismiss because, although there was no longer a dispute as to priority of invention, CIBA continued to want to litigate the Patent Board's decision regarding patentability. *See id*. at 643-47.

The Court held that, with 3V's disclaimer, there was no case or controversy and dismissed: "CIBA fails to explain why 3V, or anyone else, should continue to oppose CIBA in its efforts to demonstrate [patentability], or what 3V's 'legally cognizable' interest is in this issue." *Id.* at 645. Further, "[a]t this stage, CIBA merely asks the Court to correct what it perceives to be an erroneous decision on the part of the Board, which is not a party to any of the actions before the Court." *Id*. at 646. The Blackhorse Defendants are in the same position as 3V. They have no interest in any potentially infringing trademark, and therefore lack a cognizable legal interest as to the registrability of PFI's trademarks.

Accordingly, even if the Court holds that the Blackhorse Defendants are "parties in interest" under 15 U.S.C. § 1071(b)(4), it should dismiss this action for lack of jurisdiction because there is no case or controversy under Article III.

## **CONCLUSION**

For the foregoing reasons, Defendants' Motion To Dismiss should be granted, and the Complaint should be dismissed.

Dated:  September 22, 2014.

Respectfully submitted,

 /s/     Jeffrey J. Lopez
Jesse A. Witten (*pro hac vice* pending)
Jeffrey J. Lopez (Va. Bar No. 51058)
Adam Scott Kunz (VA Bar No. 84073)
Tore T. Debella (VA Bar No. 82037)
Jennifer Criss (VA Bar No. 86143)
DRINKER BIDDLE & REATH LLP
1500 K Street, N.W., Suite 1100
Washington, D.C. 20005-1209
Telephone: (202) 842-8800
Facsimile:  (202) 842-8465
Email:     Jesse.Witten@dbr.com
                Jeffrey.Lopez@dbr.com
                Adam.Kunz@dbr.com
                Tore.DeBella@dbr.com
                Jennifer.Criss@dbr.com

*Counsel for Defendants Amanda Blackhorse,*
*Marcus Briggs-Cloud, Phillip Gover, Jillian*
*Pappan and Courtney Tsotigh*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 22nd day of September, 2014, the foregoing pleading or paper was filed and served electronically by the Court's CM/ECF system upon all registered users in this action:

  /s/  Jeffrey J. Lopez
Jeffrey J. Lopez
DRINKER BIDDLE & REATH LLP
1500 K Street, N.W., Suite 1100
Washington, D.C. 20005-1209
Telephone:   (202) 842-8800
Facsimile:   (202) 842-8465
Email:          Jeffrey.Lopez@dbr.com

*Counsel for Defendants Amanda Blackhorse, Marcus Briggs-Cloud, Phillip Gover, Jillian Pappan and Courtney Tsotigh*

ACTIVE/ 76922754.3