**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| PRO-FOOTBALL, INC., <br><br> Plaintiff, <br><br> v. <br><br> AMANDA BLACKHORSE, MARCUS BRIGGS-CLOUD, PHILLIP GOVER, JILLIAN PAPPAN, and COURTNEY TSOTIGH, <br><br> Defendants. | Civil Action No. 1:14-cv-1043-GBL-IDD |

**MEMORANDUM OF LAW**
**IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

        In its Complaint, Pro-Football asks the Court to review a split decision of the Trademark

Trial and Appeal Board ("TTAB"), which improperly granted Defendants' petition to cancel six of

Pro-Football's federal trademark registrations containing the word "REDSKINS" as used in

connection with Washington, D.C.'s professional football team (the "Redskins Marks"), on the

ground that the marks were disparaging to a substantial composite of Native Americans at the time

each was registered.[1]  *See Blackhorse v. Pro-Football, Inc.*, 2014 WL 2757516 (T.T.A.B. June 18,

2014) (the "Order").  Pro-Football brings this action as an appeal of the TTAB's Order pursuant to

15 U.S.C. §1071(b), which provides that any "party to a cancellation proceeding" who is

"dissatisfied with the decision" is entitled to "remedy by a civil action."   15 U.S.C. §§1071(a),

(b)(1).  Further, "[w]here there is an adverse party, … any party in interest may become a party to

the action."  *Id.*  §1071(b)(4).

---

[1]    The Court must determine whether the marks were disparaging at the time of registration—*i.e.*,
1967, 1974, 1978, and 1990—and not whether they are disparaging today.  Order at *1.  Defendants'
citations to present-day online definitions thus are not relevant to the inquiry.  (Doc. 19, Br. at 1 n.1.)

Defendants do not dispute that they are adverse parties, that they have "a real interest, a personal stake, in the outcome" of this action, and that they claimed and represented this interest before the TTAB.  Order at *7.  Among other things, Defendants: (1) filed the petition that initiated the TTAB proceeding; (2) alleged they are personally injured by the registrations; (3) were the only parties to participate in the proceeding; (4) requested the relief that the TTAB granted; and (5) represented to the TTAB that this Court is a proper venue to review the Order.  Because Defendants concede their interest in the cancellation proceeding—indeed, it could not have proceeded without that interest—they are "parties in interest" and thus proper parties in this action.

Defendants nonetheless now abruptly change course and move to dismiss the Complaint on the ground that they should not be parties here because it is the TTAB that issued the Order, and thus the Director of the USPTO is the "real" party in interest.  (Doc. 19, Br. at 2.)  But an action brought under §1071(b) is a special form of review where "the district court acts as a quasi-appellate court." *Paleteria La Michoacana, Inc. v. Productos Lacteos Tocumbo S.A. de C.V.*, 2014 WL 4759945, at *5 (D.D.C. Sept. 25, 2014).  Having sought the very relief issued by the TTAB, Defendants have professed an interest in defending that Order on review.  Defendants do not (because they cannot) point to **any** case holding that a challenger to a trademark registration is not a proper defendant in an action brought under §1071(b).  Further, Defendants' position cannot be squared with §1071(b)(2), which expressly forbids joining the Director of the USPTO as a party to an inter partes proceeding and thus recognizes that such a dispute is not with the USPTO, but rather between the parties who actually (and vigorously) litigated the issue below.

Defendants also attempt to divest this Court of jurisdiction by claiming there is not an Article III "Case or Controversy" between Pro-Football and Defendants.  Not only does such a position defy logic, given that this action seeks review from Defendants' own petition for cancellation, but it also

contradicts governing case law holding that the types of injuries Defendants purportedly suffered from the continued registration of the Redskins Marks are "in harmony" with the "requirements for maintaining a law suit in an Article III court." *Jewelers Vigilance Comm., Inc. v. Ullenberg Corp.*, 823 F.2d 490, 492 (Fed. Cir. 1987).  In any event, where Congress affords a procedural right to appeal an agency decision, all that need be established is that the parties have a "personal stake" in the outcome, to assure the Court of "that concrete adverseness which sharpens the presentation of issues." *Mass. v. E.P.A.*, 549 U.S. 497, 517 (2007).

Finally, even if this Court were to find that the USPTO, and not Defendants, should participate in this action, the proper remedy is not dismissal, but rather to direct that the Complaint be served upon the Director of the USPTO pursuant to 15 U.S.C. §1071(b)(3) so that the action may continue in this Court.  To be clear, Pro-Football has no preference as to whether Defendants or the USPTO defends the Order, as long as Pro-Football can exercise its statutory right under 15 U.S.C. §1071(b)(1) to seek review of the Order through "remedy by a civil action."

## BACKGROUND[2]

**A.      Procedure For Seeking Cancellation Of A Trademark Registration.**

The Lanham Act bars the registration of trademarks that, *inter alia*, "may disparage" persons "or bring them into contempt, or disrepute."  15 U.S.C. §1052(a) ("Section 2(a)").[3]  "[A]ny person

---

[2]      On a motion to dismiss, the Court may consider documents incorporated into a complaint by reference.  *See*, *e.g.*, *McLain v. KBR, Inc.*, 2014 WL 3101818, at *3 (E.D. Va. July 7, 2014) (Lee, J.).  Because Pro-Football's Complaint seeks review of the Order, including whether the TTAB record sufficiently supported the Order, both the Order and the record may be considered on this motion.  The record for the underlying TTAB proceeding is located on the USPTO's website, at http://ttabvue.uspto.gov/ttabvue/v?pno=92046185.  All references to "**TTABVue**" herein refer to the docket number for the underlying TTAB proceeding.

[3]      To determine whether a mark is disparaging, the Court must evaluate whether a "substantial composite" of the referenced group found the marks to be disparaging, in the specific context of the registrant's services, at the time the mark was first registered.  Order at *4-5.  "[T]he perceptions *(footnote continued)*

who believes that he is or will be damaged … by the registration of a mark" may file a petition to cancel a registration of a mark on the ground that it is contrary to Section 2(a).  15 U.S.C. §1064(3).  For the petition to proceed, the petitioner must also show:  (1) a "real interest" in the proceeding based on a "'direct and personal stake in the outcome' of the cancellation"; and (2) "a reasonable basis for the belief that the challenged mark has or will cause damage." *Quality Serv. Grp. v. LJMJR Corp.*, 831 F. Supp. 2d 705, 712 (S.D.N.Y. 2011) (quoting *Ritchie v. Simpson*, 170 F.3d 1092, 1095 (Fed. Cir. 1999)).  The "real interest" requirement is intended to prevent "'mere intermeddlers' who do not raise a real controversy" from initiating cancellation proceedings. *Ritchie*, 170 F.3d at 1095.

A cancellation proceeding before the TTAB is an "inter partes" proceeding—that is, it is neither initiated or litigated by the USPTO, but rather by one or more petitioners, *i.e.*, the "person who believes that he is or will be damaged."  TTAB MANUAL OF PROCEDURE ("TBMP") §102.02.[4]  In contrast, an "ex parte" proceeding is one where an applicant seeks to appeal "an examining attorney's final refusal to register a mark"—in such cases, there are no adverse parties.  *Id.*

**B.      Procedure For Appealing The TTAB's Cancellation Of A Trademark Registration.**

In the event that the TTAB grants a petition for cancellation, a "party to a cancellation proceeding … who is dissatisfied with the decision of the [TTAB]," 15 U.S.C. §1071(a)(1), is provided with its choice of two alternatives for appealing the decision:

(1)      The party "may appeal to the United States Court of Appeals for the Federal Circuit," 15 U.S.C. §1071(a)(1); *or*

---

of the general public are irrelevant to determining if [Pro-Football's] marks are disparaging to Native Americans," and current attitudes—as opposed to attitudes in 1967, 1974, 1978, and 1990—are likewise irrelevant. *Pro-Football, Inc. v. Harjo*, 284 F. Supp. 2d 96, 133-34 (D.D.C. 2003).

[4]      "An inter partes proceeding before the Board is similar to a civil action in a federal district court.  There are pleadings …; a wide range of possible motions; conferencing; disclosures; discovery; trial; briefs; and, if requested, an oral hearing, followed by a decision on the case."  TBMP §102.03.

      (2)     The party "may … have remedy by a civil action," filed in a U.S. district court, 15 U.S.C. §1071(b)(1).

Choosing to file a civil action rather than a direct appeal has consequences:  While Federal Circuit "review is limited to the record before the TTAB, a civil action in district court affords 'litigants the option of producing new evidence in a trial court.'" *Swatch, S.A. v. Beehive Wholesale, L.L.C.*, 888 F. Supp. 2d 738, 745 (E.D. Va. 2012) (quoting J. Thomas McCarthy, MCCARTHY ON TRADEMARKS & UNFAIR COMPETITION §21:20 (4th ed. 2013) ("MCCARTHY")).[5]  There is "no reason why the dissatisfied party should be precluded from utilizing the processes of the forum best suited to his needs as long as the aid of only one forum is invoked." *Gillette Co. v. '42' Prods. Ltd.*, 435 F.2d 1114, 1117 (9th Cir. 1970).  Neither §§1071(a) nor (b) sets forth any restrictions that would make review by a district court an unavailable option to a dissatisfied party.[6]

     In structuring the statute, Congress expressed a ***preference*** for review of TTAB decisions by civil action rather than direct appeal to the Federal Circuit.  Section 1071(a)(1) provides that even where a dissatisfied party elects to file a direct appeal with the Federal Circuit, the appeal will be dismissed if "any adverse party" files notice that he elects to have further proceedings conducted by civil action in district court.  That is, if ***either*** party prefers that a district court review the underlying TTAB order, the district court will be the venue to hear the appeal.  *See* MCCARTHY §21:20 ("an appeal to the Federal Circuit can be made only with the mutual consent of all the parties").

---

[5]   *See also*, *e.g.*, *Glendale Int'l Corp. v. U.S.P.T.O.*, 374 F. Supp. 2d 479, 484 n.7 (E.D. Va. 2005) ("The principal difference between challenging a TTAB decision through an appeal to the Federal Circuit and through a civil action in federal district court is that the latter route affords a party the opportunity to introduce new evidence in support of its claims.").

[6]   *See*, *e.g.*, *Creative Arts by Calloway, LLC v. Brooks*, 2012 WL 6732907, at *3 (S.D.N.Y. Dec. 27, 2012) (section 1071(b) "permits ***any party*** dissatisfied with a TTAB ruling to commence an action in a United States District Court") (emphasis added).

An action filed in a district court pursuant to §1071(b) is not merely a "new civil action" as Defendants contend (Doc. 19, Br. at 7), but rather is a unique form of appeal, given that it necessarily seeks review of an underlying TTAB decision. *See*, *e.g.*, *Paleteria La Michoacana*, 2014 WL 4759945, at *5 (describing action as "quasi-appellate"); *ZAO Odessky Konjatschnyi Zawod v. SIA "Baltmark Invest*," 999 F. Supp. 2d 851, 858 n.3 (E.D. Va. 2014) ("This case comes before the Court on appeal from the decision of the TTAB"); TBMP §906.01 ("[A]n appeal to the district court is both an appeal and a new action."). Indeed, in the very Order under review in this case, the TTAB identified the Eastern District of Virginia as "the venue for **appeals** to District Court from USPTO inter partes proceedings." Order at *30 (emphasis added). Because of its appellate nature, a party who files a civil action under §1071(b) does not need to seek relief directly from the defendant; rather, as in any appeal, the relief requested may simply be a modification of the decision below. *See Timex Grp. USA, Inc. v. Focarino*, 2013 WL 6713119, at *2 (E.D. Va. Dec. 17, 2013) (citing 15 U.S.C. §1071(b)) (holding that district courts may "modify the TTAB decision and declare that the plaintiff's mark is entitled to registration"), *supplemented by* 993 F. Supp. 2d 606 (E.D. Va. 2014).[7]

Finally, §1071(b) prohibits involvement by the Director of the USPTO as a party when a review of inter partes TTAB proceedings are sought by civil action. Specifically, if a dissatisfied party chooses review by a civil action, the statute instructs that the Director of the USPTO "**shall not**

---

[7]   The civil action proceeds like a typical appeal in many respects. For example, just as with a standard appeal, the district court considers the record below when reviewing a TTAB order. *See Swatch AG v. Beehive Wholesale, LLC*, 739 F.3d 150, 155 (4th Cir. 2014) ("[t]he district court must admit the PTO record if a party so moves"). As noted above, one way a civil-action remedy sought pursuant to §1071(b) departs from a traditional appeal is that "the parties have an unrestricted right to submit further evidence." *Id.* If neither party submits further evidence, the Court will determine whether the TTAB's finding of disparagement was supported by substantial evidence—functionally, it is identical to review by the Federal Circuit. *See Timex*, 993 F. Supp. 2d at 607. However, if either party opts to supplement the record with additional evidence, "*de novo* review of the entire record is required because the district court 'cannot meaningfully defer to the PTO's factual findings if the PTO considered a different set of facts.'" *Id.* (quoting *Swatch AG*, 739 F.3d at 156).

be made a party to an inter partes proceeding." 15 U.S.C. §1071(b)(2) (emphasis added). Rather, "[w]here there is an adverse party, such suit may be instituted against the party in interest as shown by the records of the [USPTO] at the time of the decision complained of, ***but any party in interest may become a party to the action***." *Id.* §1071(b)(4) (emphasis added). By contrast, "[i]n any case where there is no adverse party, a copy of the complaint shall be served on the Director." *Id.* §1071(b)(3) (emphasis added).

## C.    Procedural History.

The *Harjo* **Action.** In September 1992, seven Native Americans filed a petition with the TTAB to cancel the registrations for the Redskins Marks on multiple grounds, including disparagement under Section 2(a). Compl. ¶16. In 1999, the TTAB held that the Redskins Marks were disparaging to Native Americans at the time of registration, granted the petition, and scheduled the registrations for cancellation. *Id.* ¶17. Pursuant to 15 U.S.C. §1071(b)—the same statute invoked by Pro-Football in this action—Pro-Football sought review of the TTAB's 1999 order in the U.S. District Court for the District of Colombia.[8] *Harjo*, 284 F. Supp. 2d at 100. As Judge Colleen Kollar-Kotelly recognized, "section 1071(b)(1) states that a party 'dissatisfied with the decision of the [TTAB] … may … have remedy by a civil action.'" *Id.* Neither the *Harjo* defendants (who were represented by the same counsel as Defendants here) nor the Court ever indicated or argued that the court's jurisdiction—statutory or constitutional—to review the order was lacking.

In 2003, Judge Kollar-Kotelly ***reversed*** the TTAB, ruling that the record before the TTAB, even when evaluated under the "substantial evidence" standard of review, did not support a finding of disparagement during the 1967-1990 time frame, *id.* at 135-36, and that the petitioners' claims

---

[8]    At that time, §1071(b)(4) stated that where "adverse parties resid[e] in a plurality of districts not embraced within the same State," the District Court for the District of Colombia had jurisdiction.

were barred by the doctrine of laches, *id.* at 140, 144. The laches ruling was ultimately affirmed by

the D.C. Circuit Court of Appeals in 2009, 565 F.3d 880 (D.C. Cir. 2009), and the Supreme Court

denied the *Harjo* defendants' petition for writ of certiorari, 558 U.S. 1025 (2009).

**The *Blackhorse* TTAB Proceeding.** While the *Harjo* case was working through the federal

courts, Defendants in this action filed a petition substantively identical to that filed by the *Harjo*

petitioners, asking the TTAB to cancel the registrations for the Redskins Marks on the ground of

disparagement under Section 2(a). *See* TTABVue No. 1 (Aug. 11, 2006). Defendants alleged that

each of them are "damaged by the continued registration of the marks," and "pray[ed]" that each of

them be cancelled." *Id.* at 4. The TTAB suspended the proceeding until final disposition of *Harjo*,

Compl. ¶23, after which it set a discovery and briefing schedule, *id.* ¶27. No parties other than

Defendants and Pro-Football ever participated in the cancellation proceeding.[9]

In the course of discovery, each Defendant alleged that he or she suffered an individualized,

personal, discrete, and continuing injury from the registrations. For example, in a verified response

to an interrogatory, Defendant Amanda Blackhorse represented, *inter alia*:

- "Every time [she] sees or hears the term 'redskins,' it is damaging." TTABVue No. 123 at 15.

- "From time-to time, [she] is confronted with the term in a work setting or in school, such as when someone wears a Washington NFL team jersey, and this harms her." *Id.*

- She "doesn't want to watch when the Washington NFL team is on television, even though she is a big football fan and greatly enjoys watching NFL football" because "[t]he team's name and symbols ruin her experience." *Id.* at 16.

---

[9]   During the TTAB proceeding, Defendants: (1) responded to discovery requests; (2) entered into two stipulations regarding the submission of evidence; (3) participated in conferences before the TTAB; (4) sat for depositions; (5) submitted a Notice of Reliance containing more than 7,000 pages of purported evidence; (6) filed opening and reply trial briefs; (7) filed and opposed motions; and (8) appeared at an oral hearing. *See*, *e.g.*, TTABVue Nos. 31, 34, 36, 37, 39 (at 2), 45, 47-126, 177, 178, 182, 184, 192, 197, 198.

- She visits Washington, D.C. "for educational and patriotic purposes, and to visit friends and family," but the prevalence of Redskins "paraphernalia in Washington, D.C. makes [her] feel unwelcome in the city, and reduces her willingness to travel there." *Id.*

- She "is afraid to practice freedom of speech for her fear of mockery and intimidation by those who support the use of Native imagery, symbols, and mascots in sports and the media." *Id.*

- "[T]he use of feathers in these marks harms" her because "feathers [are] used for ceremonial purposes only and should be respected as one would respect a bible in the Christian faith." *Id.* at 17.

- "[She] was especially damage[d] by the marks at issue" at a game between the Washington Redskins and Kansas City Chiefs on October 16, 2005, where "people [made] obscene and racist gestures toward" members of her advocacy group, and the registrations allegedly "helped to create the context and culture that led to such a display of hate and bigotry." *Id.*[10]

In addition to disputing Defendants' petition on the merits, Pro-Football also asserted an affirmative defense of laches, as it had in *Harjo*. In an order setting forth the applicable law for the case, the TTAB ruled that because the *Blackhorse* case "is essentially a relitigation of what transpired in the *Harjo* case," it would adopt the D.C. Circuit's legal standard for laches. TTABVue No. 40 at 12 n.6 (May 31, 2011).

On the same day as it filed its trial brief, Defendants moved the TTAB to reconsider its ruling that the D.C. Circuit's laches standard would apply. TTABVue No. 178 (Sept. 6, 2012). In that motion, Defendants ***explicitly recognized that this Court was a proper venue for appeal of the TTAB's ultimate decision.*** They argued that, while D.C. Circuit precedent applied at the time of the TTAB's decision in *Harjo*, Congress had subsequently "changed the venue in which subsequent proceedings may occur … from the District of Colombia to the United States District Court for the Eastern district of Virginia (as the alternative to an appeal to the Federal Circuit)." *Id.* at 2 (citing

---

[10]   *See also*, *e.g.*, TTABVue No. 111 at 19 (Mr. Briggs-Cloud); TTABVue No. 118 at 28-29 (Mr. Gover); TTABVue No. 113 at 13 (Ms. Pappan); TTABVue No. 116 at 39 (Ms. Tsotigh).

America Invents Act, Pub. L. 112-29, §9(a) (Sept. 16, 2011) ("AIA")).  In other words, the sole basis for Defendants' motion was that subsequent proceedings by civil action would occur in the Fourth Circuit rather than the D.C. Circuit.  *Id*; *see also id.* at 3 (AIA "changed the potential venue for subsequent federal court proceedings … to the Eastern District of Virginia").

**The TTAB's Decision.**  In a 2-1 decision, a TTAB panel majority granted Defendants' petition and scheduled the registrations for cancellation.  Order at *29, *34.  But, as Defendants correctly note, ***the registrations have not yet been cancelled***.  (Doc. 19, Br. at 6.)  Rather, the registrations will remain active and valid until any appeals have been fully resolved.  *See* TBMP §806.

In its decision, the majority recounted injuries each Defendant claimed to suffer from the continued registration of the Redskins Marks, concluding that each "has established a ***real interest***, a ***personal stake***, in the outcome of this proceeding."  Order at *7 (emphases added).  The Court also granted Defendants' motion for reconsideration of the laches standard based on Defendants' representation that an appeal of the Order could be heard in this Court, holding:

> The America Invents Act, enacted in September 2011, changed the venue for appeals to District Court from USPTO inter partes proceedings to the U.S. District Court for the Eastern District of Virginia from the U.S. District Court of the District of Columbia. ... Accordingly, subsequent judicial review of this dispute, if any, will occur either in the U.S. District Court for the Eastern District of Virginia in the Fourth Circuit or in the Court of Appeals for the Federal Circuit ….

Order at *30.[11]

Administrative Trademark Judge Bergsman dissented from the opinion, concluding that Defendants' petition was premised on the same evidentiary record that the district court in *Harjo*

---

[11]   The TTAB then looked to Fourth Circuit law in its laches analysis.  *See* Order at *32 ("the Fourth Circuit has not addressed whether laches applies to a [disparagement] claim").

"previously ruled was insufficient to support an order to cancel" the Redskins Marks, so the record remained insufficient in this case as well. *Id.* at *35.

**The Instant §1071(b) Action.** Pro-Football timely filed this lawsuit under § 1071(b)(1) against the only other parties who participated in the proceedings below, *i.e.*, Defendants. The remedies that Pro-Football seeks include, *inter alia*, that this Court enter judgment: (1) reversing the Order; and (2) ordering the TTAB to deny Defendants' petition for cancellation. Compl. at 34 (Prayer for Relief (a)-(b)).

Pro-Football also alleges, *inter alia*, that Defendants' petition was barred by laches because each Defendant unreasonably and inexcusably delayed before filing the petition, causing prejudice to Pro-Football—the very same ground on which the *Harjo* defendants' petition was dismissed by the U.S. District Court for the District of Colombia, affirmed by the D.C. Circuit. *See*, *e.g.*, Compl. ¶¶5, 8, 18-19, 24-26, 126-129, 147-148, p.21 n.6.

## ARGUMENT

The Court's jurisdiction over this lawsuit is straightforward: §1071(b) allows any party dissatisfied with a decision of the TTAB to have "remedy by a civil action," allowing "any party in interest [to] become a party to the action." 15 U.S.C. §§1071(b)(1), (4). Defendants conceded before the TTAB—as they must—that each has a "real interest" and "personal stake" in the grant or denial of the cancellation petition they filed. Order at *7. This "interest" is enough to be a party.

Defendants' argument that this action does not present a "Case" or "Controversy" fares no better—Defendants' professed injuries stemming from the registrations, and their request for legal intervention to cancel those registrations, establish a "case" or "controversy" between the parties.

Further, Defendants ignore robust case law establishing that where, as here, Congress creates a right to appeal an agency decision, Article III jurisdiction will be found upon demonstration of an injury.[12]

## I.   DEFENDANTS ARE "PARTIES IN INTEREST" UNDER 15 U.S.C. §1071(b)(4).

Under 15 U.S.C. §1071(b)(4), any party to a cancellation proceeding dissatisfied with a decision of the TTAB may, as a remedy, institute a civil action "against the party in interest as shown by the records of the [USPTO] at the time of the decision complained of, *but any party in interest may become a party to the action*" (emphasis added).[13]   As "parties in interest" to the underlying cancellation proceeding, Defendants are proper defendants in this action.

### A.   Under The Text And Structure Of 15 U.S.C §1071(b)(4), Defendants Are "Parties In Interest."

Under the plain language of §1071(b)(4), Defendants are "parties in interest."   As noted above, in order to have standing to bring a petition for cancellation on Section 2(a) disparagement grounds, a petitioner must not only attest that he "believes that he is or will be damaged" by the registration, 15 U.S.C. §1064, but also must demonstrate:  (1) a "real interest" in the outcome of the proceeding; and (2) a reasonable basis for the belief that the mark has caused or will cause damage.

---

[12]   While Defendants repeatedly encourage the Court to believe that Pro-Football's only option was to "appeal[] to the Federal Circuit under 15 U.S.C. §1071(a), where the USPTO could have defended its decision on appeal" (Br. at 9), Defendants ignore that: (1) Pro-Football is statutorily entitled to choose the avenue of review that best suits its needs; (2) as the "adverse party" to the underlying proceeding, Defendants, not the USPTO would be the appellee in the Federal Circuit; and (3) under §1071(a), Defendants would have had the option of "removing" such an appeal to this Court anyway, demonstrating this Court's ultimate jurisdiction over the dispute.  Defendants then speculate that Pro-Football "presumably" chose to file a §1071(b) action in this Court rather than a direct appeal to the Federal Circuit—notwithstanding that §1071(b) allows a party to introduce additional evidence—because, according to Defendants, the Federal Circuit supposedly has "rejected" Pro-Football's constitutional arguments. (Doc. 19, Br. at 9.) Pro-Football need not address Defendants' unfounded guesses on the merits other than to point out that Defendants do not cite a single case addressing a claim of *disparagement* brought under Section 2(a).

[13]   While Defendants repeatedly quote the part of the statute referring to the records of the USPTO (*see* Doc. 19, Br. at 7, 10, 11, 12 n.8), they never disclose the second part of the sentence, *i.e.*, that "any party of interest may become a party to the action."

*Ritchie*, 170 F.3d at 1095.  To show a "real interest," the cancellation petitioner "must  have a direct and personal stake in the outcome," *i.e.*, a "legitimate personal interest."  *Id.*  This requirement ensures that "'mere intermeddlers' who do not raise a real controversy from bringing"  cancellation petitions.  *Id.*  Here, the TTAB has determined—and Defendants do not dispute—that each Defendant has "a real interest, a personal stake, in the outcome of this proceeding."  Order at *7.  In addition, there were no other parties to the proceeding below who asserted any interest in cancellation.  Thus, Defendants are, by definition, parties in interest.[14]

Defendants argue that they have "no economic or legal interest" in this action because an adverse ruling by the Court "will not affect any of their economic or legal rights or obligations"; they would only "be pleased or disappointed" by the result.  (Doc. 19, Br. at 10.)  Such a position, however, flatly contradicts Defendants' earlier representations that the continued existence of the registrations causes them, and will continue to cause them, direct and personal injury.  Defendants are not mere members of the public who would simply be "disappointed" by a reversal of the Order; their position is that reversal would cause them injury.  It is this "direct and personal" stake that afforded them standing to file a petition in the first place.  And if they have a "direct and personal" stake in seeking cancellation, that same "direct and personal" stake will necessarily be implicated by

---

[14]   Defendants make no attempt to define "party in interest."  The phrase appears to have been first used in the version of the Patent Act passed in 1952, which stated in relevant part that a party "dissatisfied with the decision of the board of patent interferences" may have a civil remedy "instituted against the party in interest as shown by the records of the Patent Office at the time of the decision complained of, but any party in interest may become a party to the action."  35 U.S.C. §146, Pub. L. 82-593, 66 Stat. 792 at 803 (July 19, 1952).  A few years later, one district court interpreted the phrase "party in interest" to mean "an indispensable party."  *Minn. Mining & Mfg. Co. v. Chavannes Indus. Synthetics, Inc.*, 128 F. Supp. 659, 661 (D. Del. 1955).  Here, Defendants are indispensable parties—they are the only parties who established standing below; absent their presence, no party with standing would remain before the TTAB and this Court would be required to vacate the Order and dismiss the petition.  *Cf. Harjo*, 284 F. Supp. at 144 (dismissing cancellation petition, including on ground that laches barred petitioners from bringing petition).

reversal of the Order.  Further, Defendants cite no authority that they must have an "economic" or "legal" interest, akin to ownership of a competing trademark, to be a "party in interest"—the statute contains no such limitation, and such an interpretation contradicts the "interest" required to file a petition.

Similarly, Defendants assert that adverse parties in cancellation proceedings "[o]rdinarily" are "two businesses claiming rights" to a mark, while this action involves individuals "who sought cancellation on public interest grounds."  (Doc. 19, Br. at 13.)  While this may be true, Section 1071(b), does not distinguish between petitioners' motives for seeking cancellation; rather, it permits "*any* party in interest" to be added as a defendant to the civil action.  Further, while Defendants cite the "public interest" as their motive for filing, they have repeatedly professed that their own direct and personal interests, apart from those of the general public, are at stake.  *See Jewelers Vigilance*, 823 F.2d at 493 (standing established where petitioner shows "a personal interest in the outcome of the case beyond that of the general public," even where the petitioner "'may invoke the general public interest in support of their claim'") (quoting *Warth v. Seldin*, 422 U.S. 490, 502 (1974)).

**B.      Defendants Have Not Disclaimed Or Disavowed Their Interest In Cancellation.**

Not only did Defendants profess to have an "interest" in this dispute when they filed the petition to cancel before the TTAB, but they continue to have an interest in the dispute because: (1) they have not disclaimed their interest by claiming they are no longer harmed by the registrations' validity; and (2) the registrations have not yet been cancelled.

Defendants rely heavily on a patent case, *3V, Inc. v. CIBA Specialty Chems. Corp.*, 587 F. Supp. 2d 641 (D. Del. 2008), for the proposition that Defendants are not "parties in interest."  (See Doc. 19, Br. at 10-11.)  *3V*, however, strongly supports Pro-Football.  In *3V*, the Board of Patent Appeals and Interferences ("BPAI") found that CIBA had priority of invention over 3V on certain

- 14 -

patents, but certain of CIBA's claims were unpatentable.  *Id.* at 642.  On appeal, 3V initiated a civil

action against CIBA under 35 U.S.C. §146 challenging the priority determination, and CIBA cross-

claimed on BPAI's patentability determinations.  *Id.*[15]  After the civil action was filed, the parties

entered settlement negotiations, whereupon 3V formally ***disclaimed*** its entire interest in the patent,

dedicating "all interest in the patent to the public."  *Id.* at 645, 647.  CIBA, however, still wanted the

Court to consider whether its claims were patentable.  The court concluded that for a party to be a

"party in interest" under §146, the parties "must have ***some articulable reason*** to participate in the

dispute."  *Id.* at 647 (emphasis added).  3V's statutory disclaimer of any and all interest in the patent

removed any case or controversy between the parties—3V, through its own admission, no longer had

an articulable reason to challenge CIBA's claims, or any other stake to protect in the litigation.

Here, however, Defendants have an "articulable reason" to participate in this dispute:  they

allege to have been, and will continue to be, damaged "by the continued registration of the marks."

TTABVue No. 1 at 4.  Further, because the registrations have not yet been cancelled, but only

***scheduled*** for cancellation, Defendants ostensibly continue to be injured by the registrations.

Defendants have not "disclaimed" their "legitimate, personal interest" in having the registrations

cancelled; if that were the case, this Court should vacate the Order and direct the petition to be

denied on the basis that no one with standing remains to litigate it.  Nor can Defendants try to

remove themselves from the dispute they initiated by stating they no longer have an interest because

Pro-Football's dispute is now with the USPTO—under such logic, CIBA's dispute on appeal was

---

[15]   35 U.S.C. §146 stated at that time that "[a]ny party to an interference dissatisfied with the decision of the [BPAI] may have remedy by civil action" and that "suit may be instituted against the party in interest as shown by the records of the [USPTO] at the time of the decision complained of, but any party in interest may become a party to the action."  *3V*, 587 F. Supp. 2d at 643 n.2.

not with 3V, but with the BPAI (and vice versa).[16]   Rather, any disclaimer by Defendants would serve to moot the underlying petition, requiring its dismissal.[17]

### C.   The Proceeding Below Was Inter Partes, With Defendants Appearing As Adverse Parties.

Defendants also argue that they are not "parties in interest" because it is the USPTO with whom Pro-Football now has a dispute, akin to an ex parte review rather than an adversarial, inter partes proceeding.  Defendants, however, were quintessential adverse parties below.

*First*, the cancellation proceeding indisputably was conducted as an inter partes proceeding. Defendants participated in every stage of the litigation as the sole representatives on behalf of the petition they filed—they produced discovery, sat for depositions, participated at TTAB conferences, submitted more than 7,000 paged of purported evidence with their Notice of Reliance, filed trial briefs, filed and opposed motions, and appeared at an oral hearing before the TTAB.

*Second*, both the TTAB and courts understand cancellation proceedings such as the one below to be inter partes.  *See* Order at *30 (describing proceeding below as "inter partes"); TBMP §102.02 (describing cancellation proceedings as inter partes); *Promgirl, Inc. v. JPC Co., Ltd.*, 2009 WL 6424064, at *3 (T.T.A.B. Dec. 24, 2009) (similar); *Rosenruist-Gestao E Servicos LDA v. Virgin*

---

[16]   Defendants cite *Nachtman v. Toulmin*, 196 F. Supp. 367 (S.D. Ohio 1961) for the proposition that "party in interest" refers only "to the owner or assignee of the patent at issue or a similar patent, and not the adverse party to the proceedings."  (Br. at 11.)  *Nachtman* says no such thing—there, the defendant conveyed all "right, title and interest" in his patent to Union Carbide, who then recorded its interest with the USPTO.  *Id.* at 368.  Because the defendant no longer retained any interest in the patent, he was not a "party in interest."  Defendants, however, have not disclaimed their previously asserted interest.  Further, Defendants' interpretation of *Nachtman* ignores the clause of §1071(b)(4) that says that "any party in interest may become a party to the action."

[17]   *Arizonans for Official English v. Ariz.*, 520 U.S. 43, 73 (1997) ("When a civil case becomes moot pending appellate adjudication, [t]he established practice … in the federal system … is to reverse or vacate the judgment below and remand with a direction to dismiss.") (internal quotes omitted).

- 16 -

*Enters. Ltd.*, 511 F.3d 437, 443 n.4 (4th Cir. 2008) ("[a]n inter partes proceeding … is an adversarial action between parties" that "can take the form of … a cancellation proceeding").

**Third**, as its sole support, Defendants cite to *Hans C. Bick, Inc. v. Watson*, 253 F.2d 344 (D.C. Cir. 1958) for the proposition that a party who filed a petition for cancellation was not a "party in interest" because the plaintiff's dispute was really with the Commissioner of Patents. (*See* Br. at 12-13.) *Bick*, however, was decided under a version of the Patent Act where the Commissioner of Patents could be named as a party to a civil action, which is what the plaintiff had done. The Commissioner moved to dismiss the complaint, arguing that only the petitioners, not the Commissioner, should have been named. *Id.* at 344. The D.C. Circuit ruled that because the statute specifically allowed the plaintiff to sue the Commissioner, "[i]n the circumstances it would be pointless to require the appellant to sue only the petitioners rather than the Commissioner, and we do not believe that Congress so intended." *Id.* at 346. Four years later, however, Congress amended the applicable statute by removing the provision that said the Commissioner could be joined as a party to a civil action and inserting language stating that the Commissioner "***shall not*** be made a party to an inter partes proceeding." *See* Pub. L. 87-772, 76 Stat. 769 at 772 (Oct. 9, 1962) (emphasis added). This language remains in the statute today. 15 U.S.C. §1071(b)(2). This amendment demonstrates Congress's intent that that adversarial, inter partes disputes are ***not*** to be considered disputes with the USPTO. As a leading treatise concludes: "The proper party defendant in the civil case is the opponent (e.g., opposer, applicant, petitioner for cancellation, registrant, etc.), not the Commissioner." MCCARTHY §21:24.[18]

---

[18]   *Bick* has been heavily criticized and has not been cited by a federal court for almost 50 years. *See* MCCARTHY §21:24 (describing *Bick* as "aberrational," concluding that "[a]lthough the court strove mightily to classify the case as review of an ex parte decision, such a result is probably impossible [today] since the 1962 amendment says that the Commissioner cannot be a party

*(footnote continued)*

### D.     Both Defendants And The TTAB Have Already Argued And Decided That This Court Has Jurisdiction Under §1071(b)(4).

Both Defendants and the TTAB have expressed that the Eastern District of Virginia is a proper court to review the Order.  As noted above, during the cancellation proceeding, Defendants filed a motion asking the TTAB to "reconsider the legal standard for laches," in which Defendants argued that the AIA "changed the venue" for "subsequent proceedings … from the District of Colombia to the United States District Court for the Eastern District of Virginia (as the alternative to the Federal Circuit)" and "[t]hus, subsequent judicial proceedings, if any, will occur in either the Fourth Circuit or in the Federal Circuit."  TTABVue No. 178 at 2; *see also id.* at 3 (similar). Defendants thus asked the TTAB to reconsider its earlier ruling, which had stated that the legal standard for laches in this case would be governed by D.C. Circuit law.  Given that the change of a possible venue to the Eastern District of Virginia was Defendants' sole basis for their motion, Defendants cannot now be heard to claim that this Court is not an available forum.

Further, the TTAB relied on Defendants' representations, agreeing that "subsequent judicial review of this dispute, if any will occur either in the U.S. District Court for the Eastern District of Virginia in the Fourth Circuit or in the Court of Appeals for the Federal Circuit."  Order at *30.  The TTAB then provided specific analysis of Fourth Circuit law on this issue, conceding that "the Fourth

---

defendant in inter partes review").  Further, Defendants cannot rely on the Patent Act for guidance on this point, because the Patent Act did ***not*** amend its language to exclude the Director from being made a party; to the contrary, it still maintains that while the Director shall not be "a necessary party" to a derivation proceeding, it may nonetheless be a party.  35 U.S.C. §146.  In addition, in the 1962 amendment, Congress "eliminated" all cross-references "to patent appeals and inserted specific rules for review of trademark decisions." MCCARTHY §21:20.

Circuit has not addressed whether laches applies to a claim that a term disparages a substantial composite of an ethnic or cultural group." *Id.* at *32.[19]

"[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (quoting *Davis v. Wakelee*, 156 U.S. 680, 689 (1895)). "This rule, known as judicial estoppel, 'generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase.'" *Id.* (quoting *Pegram v. Herdrich*, 530 U.S. 221, 227 n.8 (2000)). Such is the case here—Defendants relied on an argument that this Court is an available venue for review in order to avoid the law of the D.C. Circuit and prevail on its laches argument before the TTAB. Defendants should be precluded from adopting a contrary position in this Court.

### E.    Defendants Are The Only Proper Parties To Contest Laches.

Finally, Defendants are "parties in interest" because Pro-Football has asserted a laches defense against them—a necessarily individualized and personal inquiry that cannot be adequately defended by the Director of the USPTO or any other party. Pro-Football's laches defense asserts that each Defendant unreasonably and inexcusably delayed in filing the petition for cancellation. *See*, *e.g.*, Compl. ¶¶8, 126-129, 147-148. This is a claim that directly implicates Defendants' own actions, not the TTAB or the Director of the USPTO. Indeed, this defense formed the basis for dismissal of

---

[19]   The TTAB's own "Media Fact Sheet," made available the same day that the Order was issued, posed the question "What are the options for appealing this TTAB decision?" and the response: "Any civil action would be filed in the U.S. District Court for the Eastern District of Virginia, which has jurisdiction over civil actions seeking review of TTAB cancellation proceedings." http://www.uspto.gov/news/USPTO_Official_Fact_Sheet_on_TTAB_decision_in_Blackhorse_v_Pro_Football_Inc.pdf at 2.

the *Harjo* petition—four separate opinions were issued regarding the applicability of the laches

defense by the D.C. District Court and D.C. Circuit Court of Appeals. *See id.* ¶¶18, 19, 24, 25.

Defendants indisputably have an "interest" in establishing that their petition was not barred

by laches; otherwise, they must concede that laches barred their petition, which would require the

Court to reverse the Order and dismiss the petition. *See Harjo*, 284 F. Supp. at 144. This

independently demonstrates that they are "parties in interest" to this action.

## II.     PRO-FOOTBALL'S ACTION PRESENTS A "CASE" OR "CONTROVERSY."

Recognizing that §1071(b) provides this Court with statutory jurisdiction to hear this action,

Defendants resort to claiming that Pro-Football does not present a "Case" or "Controversy" under

Article III of the U.S. Constitution. This argument is difficult to take seriously: The basis of

Defendants' petition for cancellation is that they are personally injured by the registrations, and the

TTAB granted the relief they specifically requested. While Defendants try to avoid this reality by

claiming that Pro-Football's controversy is not with Defendants, but rather the USPTO, Defendants

have already conceded, for much of the same reasons articulated above, that reversal of the Order

would cause them specific injury sufficient to confer Article III jurisdiction upon them.

***First***, the TTAB's finding that Defendants had sufficient standing to bring their petition for

cancellation necessarily establishes that they have a sufficient interest in an appeal of the TTAB's

resolution of that same petition. In *Jewelers Vigilance Committee, Inc. v. Ullenberg Corp.*, 823 F.2d

490 (Fed. Cir. 1987), the Federal Circuit recognized that requisite standing to file a petition to

oppose a trademark registration "is in harmony with the standing requirements for maintaining a law

suit in an Article III court." *Id.* at 492 (citing *Baker v. Carr*, 369 U.S. 186, 204 (1962)). The Court

explained:

> Of course, the constitutional requirement remains that the opposer "must allege a
> distinct and palpable injury to himself, even if it is an injury shared by a large class
> of other possible litigants. … But so long as this requirement is satisfied, persons to

whom Congress has granted a right of action, either expressly or by clear implication, may have standing to seek relief on the basis of the legal rights and interests of others, and, indeed, may invoke the general public interest in support of their claim."

*Id.* at 493 (quoting *Warth v. Seldin*, 422 U.S. 490, 501 (1974) (ellipsis in original)).  Here, Defendants have alleged "a distinct and palpable injury to" themselves from the continued validity of the registrations, which have yet to be cancelled.  *See* Order at *7 (each Defendant "has established a real interest, a personal stake, in the outcome of this proceeding").  Because the standing for filing a cancellation petition are "in harmony" with the Article III requirements for participating in a lawsuit, this Court may easily find an Article III "case or controversy" here.

**Second**, Defendants describe this case as a "declaratory judgment action" that requires the parties to have, among other things, sufficient "adverse legal interests" (Doc. 19, Br. at 14 (quoting *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007).)  Defendants ignore, however, that this case is not simply a "declaratory judgment action," but rather a request for **review** of an agency determination, where the relief sought includes a reversal of the Order below and dismissal of Defendants' petition.  "[W]here Congress has accorded a procedural right to a litigant, such as the right to appeal an administrative decision"—as §1071(b) affords—certain requirements of Article III justiciability, such as "immediacy and redressability," are "relaxed."  *Consumer Watchdog v. Wisconsin Alumni Research Found.*, 753 F.3d 1258, 1261 (Fed. Cir. 2014) (citing *Mass. v. E.P.A.*, 549 U.S. 497, 517-18 (2007)).  Rather, all such a litigant must demonstrate is injury.  *Id.*[20]

A sufficient "case" or "controversy" will be found in such circumstances where a party has "a personal stake in the outcome of the controversy as to ensure that the dispute sought to be

---

[20]  As *Consumer Watchdog* explains, the context of a statutory grant of a procedural right, such as review of a USPTO decision, "distinguishes the present inquiry from that governing a declaratory judgment action," 753 F.3d at 1262, which Defendants improperly assumes applies.

- 21 -

adjudicated will be presented in an adversary context and in a form historically viewed as capable of judicial resolution." *Sierra Club v. Morton*, 405 U.S. 727, 732 (1972) (quotation marks and citations omitted).  As the Supreme Court recently recognized, whether a party has a "personal stake" in a case and whether a party has Article III standing "are flip sides of the same coin"—they are "simply different descriptions of the same judicial effort" to make sure that the parties have sufficient interests to present "concrete adverseness." *Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 288 (2008).

Defendants do not dispute that Pro-Football would be injured by the cancellation of the registrations sufficient to give it Article III standing in this Court; rather, Defendants argue that there are "no legal relations" as between Pro-Football and Defendants—"just a disagreement as to whether [Pro-Football's] trademarks may disparage Native Americans."  (Doc. 19, Br. at 15.)  To the contrary, there certainly is a robust controversy as between Pro-Football and Defendants: Defendants filed a petition to cancel Pro-Football's registrations, which would cause Pro-Football injury; and Pro-Football now seeks reversal of the Order and dismissal of Defendants' petition, which Defendants concede would cause them injury.  These respective injuries, along with Defendants' professed personal and concrete interest in the cancellation of the registrations, demonstrate that each party has a sufficient "personal stake" to guarantee that the issues will be presented in an adversary context.  That is all that is necessary in the context of a statutorily-created review of an agency action.

On this closer inspection, the premise of Defendants' argument crumbles.  Imagine, for example, if Pro-Football had prevailed before the TTAB and Defendants sought review:  Would there be no "case" or "controversy" as between Defendants and Pro-Football because Defendants do not have a "legal interest" in the registrations for Article III purposes?  Accepting Defendants'

arguments, no such petition for cancellation based on disparagement could ever be reviewed in a federal court—be it the Federal Circuit or a district court—because the petitioner would never have its own competing mark at issue.  Perhaps that is why Defendants do not cite a single trademark case where Article III justiciability has not been found from a TTAB review of a petition to cancel or oppose a mark's registration.

*Third*, Defendants rely on a single patent case—*Consumer Watchdog v. Wisconsin Alumni Research Foundation*—for the proposition that this action does not present a sufficient "case" or "controversy."  (Doc. 19, Br. at 15-16.)  *Consumer Watchdog*, however, is inapposite.  Under 35 U.S.C. §311(a) of the Patent Act, *any* third party—whether or not it has any personal stake or real interest in a patent—may file a request for reexamination of that patent with the Patent Trial and Appeal Board, without any standing requirements.  *See Consumer Watchdog*, 753 F.3d at 1262 ("[t]he statute at issue here allowed any third party to request reexamination").  Consumer Watch, a public charity, made such a reexamination request.  *Id.* at 1260.  Consumer Watch, however, had no individual interest in the patent at issue apart from "a general grievance"; that is, it had no "particularized, concrete stake in the outcome of the reexamination."  *Id.* at 1262-63.  Here, however, Defendants allege—and the TTAB found—that each Defendant did have a particularized, "personal stake in the outcome of" the TTAB proceeding.[21]  Order at *7.  Indeed, Defendants could

---

[21]   This is confirmed by Ms. Blackhorse's testimony about her alleged personal injuries from the registrations—she represented that, as a result of the registrations, she is harmed, *e.g.,* when: she is "confronted" with a Redskins jersey at work or school; she is unable to watch NFL football games on television, even though she wants to, because the team name and symbol "ruin her experience"; the prevalence of Redskins paraphernalia in Washington, D.C., reduces her willingness to travel there; and she was subjected to "obscene and racists gestures" at an October 16, 2005 football game, which causes her to be "afraid to practice freedom of speech."  TTABVue 123 at 15-17.

not have alleged only "a general grievance" without a "personal stake," or they could not have established standing to bring their petition in the first place.[22]

*Fourth*, Defendants suggest that the Article III inquiry for a defendant is equal to that for a plaintiff.  (*See* Br. at 16 (quoting *Arizonans for Official English v. Arizona*, 520 U.S. 43 (1997)).)  However, in the "rare[]" situation in which Article III jurisdiction "focus[es] … on the defendant," the "inquiry implicates questions related to whether the defendant has a sufficient interest to present a justiciable controversy with the plaintiff."  *Nat. Res. Defense Council, Inc. v. Jamison*, 787 F. Supp. 231, 235 n.1 (D.D.C. 1990).  In this case, for the reasons stated above, Defendants have a sufficient interest the cancellation of the registrations to present a controversy.   And while Defendants claim they have no interest in this action because they do not own "any potentially infringing trademark" (Doc. 19, Br. at 17), a party may have "a real interest" in a mark's registration even "without proprietary rights in a mark or without asserting that it has a right or has an interest in using the alleged mark."  *Jewelers Alliance*, 823 F.2d at 493.  Such is the case here.

## III.   IF THE COURT FINDS THE USPTO TO BE THE PROPER PARTY TO DEFEND THE ORDER, IT SHOULD PERMIT PRO-FOOTBALL TO SERVE ITS COMPLAINT UPON THE DIRECTOR OF THE USPTO.

For the reasons above, this Court should deny Defendants' motion.   If this Court nonetheless decides that Defendants are not proper parties in this action, Pro-Football respectfully submits that the proper remedy is not dismissal of the Complaint, but rather that the Court permit Pro-Football to serve the Complaint upon the Director of the USPTO pursuant to 15 U.S.C. §1071(b)(3).

---

[22]   Defendants also cite to *3V* for the proposition that there is no case or controversy (Doc. 19, Br. at 17), but there the lack of case or controversy stemmed from a party's disclaimer to the patent, eliminating the dispute.  Here, however, Defendants have not disclaimed their interest their petition for cancellation.

Courts recognize that outright dismissal of a complaint seeking review of a TTAB order should not be granted where it "would effectively preclude review of the determination entered by the TTAB." *Prod. Source Int'l, LLC v. Nahshin*, 2014 WL 2919510, at *6 (D.N.J. June 27, 2014). Thus, for example, courts will transfer an action to another district, where appropriate, rather than dismiss a case filed in the wrong venue. *See id.*; *Trizetto Grp., Inc. v. Farmaco-Logica, B.C.*, 2013 WL 140253, at *2 (D.D. C. Jan. 11, 2013) (citing cases). Likewise here, if the Court agrees with Defendants that this action should be defended by the Director of the USPTO, it should permit the Complaint to be served upon the Director so that Pro-Football may have its appeal heard by a district court, as is its statutory right under §1071(b). *See* Fed. R. Civ. P. 21(a) ("Misjoinder of parties is not a ground for dismissing an action. On motion or on its own, the court may at any time, on just terms, add … a party.").

Such a resolution would be sensible for multiple reasons. First, the Director is located in Alexandria, Virginia for jurisdictional purposes, so the action would remain before this Court. Second, the Director has already been advised of this action. *See* Dkt. 9 ("Report on the Filing or Determination of an Action Regarding a Patent or Trademark"). Third, Defendants repeatedly suggest that the USPTO should defend this action. (*See*, *e.g.*, Br. at 2, 8 n.7, 9, 14). If this Court agrees, Defendants should not object to the Board participating before this Court in their stead.

## **CONCLUSION**

Defendants' motion to dismiss should be denied.


Dated:  October 3, 2014

Respectfully submitted,

 /s/ *Craig C. Reilly*
Craig C. Reilly, Esq. (VSB # 20942)
craig.reilly@ccreillylaw.com
THE LAW OFFICE OF CRAIG C. REILLY
111 Oronoco Street
Alexandria, Virginia 22314
Tel:  (703) 549-5354
Fax:  (703) 549-5355

Robert L. Raskopf (*pro hac vice*)
robertraskopf@quinnemanuel.com
Todd Anten (*pro hac vice*)
toddanten@quinnemanuel.com
Claudia T. Bogdanos (*pro hac vice*)
claudiabogdanos@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
Tel:  (212) 849-7000
Fax:  (212) 849-7100

*Counsel for Plaintiff Pro-Football, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on October 3, 2014, I caused the foregoing pleading or paper to be filed and served electronically by the Court's CM/ECF system upon all registered users in this action, including the following counsel of record:

Jesse A. Witten
Jeffrey J. Lopez
Adam Scott Kunz
Tore T. DeBella
Jennifer Criss
DRINKER BIDDLE & REATH LLP
1500 K Street, N.W., Suite 1100
Washington, D.C. 20005-1209
Tel : (202) 842-8800
Fax : (202) 842-8465
Jesse.Witten@dbr.com
Jeffrey.Lopez@dbr.com
Adam.Kunz@dbr.com
Tore.DeBella@dbr.com
Jennifer.Criss@dbr.com

  /s/  *Craig C. Reilly*
Craig C. Reilly, Esq. (VSB # 20942)
craig.reilly@ccreillylaw.com
THE LAW OFFICE OF CRAIG C. REILLY
111 Oronoco Street
Alexandria, Virginia 22314
Tel:  (703) 549-5354
Fax:  (703) 549-5355
*Counsel for Plaintiff*

- 27 -