**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | |
|---|---|
| PRO-FOOTBALL, INC., <br><br> Plaintiff, <br><br> v. <br><br> AMANDA BLACKHORSE, MARCUS BRIGGS-CLOUD, PHILLIP GOVER, JILLIAN PAPPAN, and COURTNEY TSOTIGH, <br><br> Defendants, <br><br> and <br><br> UNITED STATES OF AMERICA, <br><br> Intervenor. | Civil Action No. 1:14-cv-1043-GBL-IDD |

**PLAINTIFF'S BRIEF IN SUPPORT OF ITS
MOTION FOR LEAVE TO FILE UNDER SEAL**

Pursuant to Local Civil Rule 5(D), Plaintiff Pro-Football, Inc. ("PFI") has moved for leave to file a **REDACTED** version of its opening brief in support of its motion summary judgment on constitutional issues and to file certain exhibits thereto **UNDER SEAL**. The redacted and sealed materials are confidential, competitively sensitive business information of PFI. Disclosure of those materials and the information they contain in the public record would injure PFI's competitive standing. It is respectfully submitted that the Court can and should allow redacted and sealed filings to protect PFI's business interests and competitive standing.

**STATEMENT OF THE CASE**

This is an action concerning PFI's trademark rights in its "Redskins Marks." Specifically, in its pending motion for summary judgment, PFI seeks to have the Court overturn,

on constitutional grounds, the decision of the Trademark Trial and Appeal Board ("TTAB") to cancel the federal registrations for the Redskins Marks. In the course of making that motion, PFI will present evidence regarding its investment in, and the value of, the cancelled marks.

## ARGUMENT

Trademark rights are a property interest that is entitled to constitutional protection. "The Lanham Act provides national protection of trademarks in order to secure to the owner of the mark the goodwill of his business and to protect the ability of consumers to distinguish among competing producers." *Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 198 (1985). A trademark itself protects the owner's "goodwill **which he spent** energy, time, and **money to obtain**," ensuring that the public will be able to distinguish his goods and services from those of a competitor. *Inwood Labs, Inc. v. Ives Labs. Inc.*, 456 U.S. 844, 854 n.14 (1982) (emphasis added). Specifically, the money PFI has spent to develop the Redskins Marks, to increase its brand recognition, and to protect those marks constitutes an essential investment in its goodwill. The amount of money spent constitutes sensitive business information that is not disclosed to competitors, and which gives PFI a competitive edge in the market place. That confidential, competitively sensitive information should not be disclosed in the public judicial record, because such public disclosure would injure PFI's competitive standing.

Specifically, certain information concerning the amounts PFI has expended in the use, promotion, registration, and protection of its registrations of the disputed trademarks has been **REDACTED** from its brief and a supporting declaration. The **REDACTED** information is contained either in documents that were previously filed under seal before the TTAB and ordered to remain under seal by this Court, (Dkt. 32 ¶ 6; Dkt. 37 ("ORDERED that Dkts. 46 and 183 of the TTAB Record to be filed under seal with this Court")), or in documents that were filed under

seal with the United States District Court for the District of Columbia in *Pro-Football, Inc. v. Harjo*, No. 99-cv-1385 (D.D.C.) (Dkt. 111). In addition, PFI has filed **SEALED** versions of the exhibits that provide back-up data regarding those expenditures. All of the exhibits filed **UNDER SEAL** were previously filed under seal with the United States District Court for the District of Columbia in *Pro-Football, Inc. v. Harjo*, No. 99-cv-1385 (D.D.C.) (Dkt. 111). PFI respectfully submits that the proposed sealing and redactions are proper and should be allowed.

## I. GOVERNING PRINCIPLES OF LAW REGARDING SEALING

Under the local rules, a party may file a motion to seal together with the proposed sealed filings. E.D.VA.CIV.R 5(D). Thereafter, the Court will determine whether the sealing or redactions are proper. PFI follows that practice in this motion.

Under current Fourth Circuit law, the district court must do the following prior to sealing any court records:

> (1) give public notice of the request to seal and allow interested parties a reasonable opportunity to object, (2) consider less drastic alternatives to sealing the documents, and (3) provide specific reasons and factual findings supporting its decision to seal the documents and for rejecting the alternatives.

*Ashcraft v. Conoco, Inc.*, 218 F.3d 282, 288 (4th Cir. 2000). Each procedural requirement has been met here by PFI's motion.

To satisfy the first requirement, the Court must provide notice of a request for sealing in the court record and provide interested persons with "an opportunity to object." *In re Knight Pub. Co.*, 743 F.2d 231, 235 (4th Cir. 1984). Individual notice is not required, and the Court may give adequate notice either by "notifying the persons present in the courtroom of the request to seal" at the time of the hearing, or by "docketing [the sealing request] in advance of deciding the issue." *Id*. In accordance with Local Civil Rule 5 procedures, this sealing motion was publicly docketed, satisfying the first requirement.

To meet the second requirement, the Court must consider using redactions or limited sealing (either in scope or duration) in lieu of permanent, blanket sealing. To satisfy the second requirement, PFI used limited sealing measures—*viz.*, PFI has filed a redacted brief (instead of a sealed one), and filed only certain exhibits under seal (instead of all of the exhibits). In addition, all of the information that PFI has filed under seal has been previously filed under seal before either the TTAB, this Court, or the United States District Court for the District of Columbia.

To meet the third requirement, the Court must make specific findings, supported by the record, that justify sealing under the applicable standard—either the First Amendment or common law. PFI respectfully submits that allowing these sealed or redacted filings is proper for the reasons stated next in Section II.

## II.     JUSTIFICATIONS FOR SEALING AND REDACTING MATERIALS

Federal courts classify "trade secrets" and "confidential business information" as species of "property," which are protected by the Fifth Amendment of the United States Constitution. *See Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1003-04 (1984) (trade secrets are property protected by the Fifth Amendment); *Carpenter v. United States*, 484 U.S. 19, 26 (1987) (confidential business information). Under federal law, a "trade secret" may be any information, used for a business purpose, which gives the user an advantage over competitors who do not know it; therefore, the touchstone of a "trade secret" is secrecy, not novelty in the patent sense. *See Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 474-78 (1974). Similarly, "confidential business information" need not be either a "trade secret" or a patentable invention; rather, it may simply be information, maintained in confidence, that has been "acquired or compiled by a corporation in the course and conduct of its business … to which the corporation has the exclusive right and benefit." *See Carpenter*, 484 U.S. at 26. "Confidential business

information" and "trade secrets" may be protected by the equitable authority of the courts, such as "through the injunctive process or other appropriate remedy." *Id.* Accordingly, the federal courts broadly define "confidential business information" and "trade secrets," and use broad, equitable powers to protect a party from competitively injurious disclosures of that information.

State law and common law principles also broadly protect confidential business information and trade secrets. Under the Uniform Trade Secrets Act, a "trade secret" is defined as any "information, including but not limited to, a formula, pattern, compilation, program, device, method, technique, or process" that has "independent economic value, actual or potential, from not being generally known," and which is subject to "reasonable" efforts to maintain confidentiality. *See*, *e.g.*, VA. CODE ANN. § 59.1-336 (2014 Repl. Vol.). Similarly, under long-standing common law principles, a "trade secret may consist of any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it," such as "a list of customers." RESTATEMENT OF TORTS § 757, *cmt. b* (1939) (emphasis added). Under these universally recognized principles of law, customer names, client identities, price and cost information, business terms, and a host of other forms and species of business information have been protected as "trade secrets" or "confidential business information."

During discovery, the parties have exchanged great volumes of confidential business information—including PFI's financial, marketing, and operational information. Civil discovery proceedings are "not public components of a civil trial," and, in general, civil discovery is "conducted in private as a matter of modern practice;" therefore, the raw fruits of civil discovery are not themselves judicial records and may be kept non-public under a protective order. *Seattle*

5

*Times Co. v. Rhinehart*, 467 U.S. 20, 33-35 (1984). Here, the parties agreed to a protective order that shielded their discovery information from public disclosure (Dkt. 26).

When confidential discovery materials are filed with the Court in connection with a summary judgment motion, however, a tension arises between the parties' interests in keeping materials confidential and the public's right of access to "judicial records." *See Rushford v. The New Yorker Magazine, Inc.*, 846 F.2d 249 (4th Cir. 1988); *see also Ashcraft*, 218 F.3d 282. Such a tension arises here, as the parties have commenced briefing their respective motions for summary judgment.

Generally, "judicial records" are presumptively public: "It is clear that the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Comm., Inc.*, 435 U.S. 589, 597 (1978). That right of access is allowed so that the press and public can perform a "watch dog" function, ensuring that the administration of justice is fair, impartial, and effective. *See Va. Dept. of State Police v. The Washington Post*, 386 F.3d 567, 575 (4th Cir. 2004), *cert. denied*, 544 U.S. 949 (2005) ("Publicity of such records … is necessary … so that the public can judge the product of the courts in a given case."); *accord Nixon*, 435 U.S. at 597-98 ("The interest necessary to … compel[] access has been found … in the citizen's desire to keep a watchful eye on the workings of public agencies."). The public right of access (whether based on the common law or the First Amendment) is a presumptive right, however, that may be overcome upon a proper showing.

Even when factual materials have been submitted to the Court, "there may be instances in which discovery materials should be kept under seal even after they are made part of a dispositive motion. The mere existence of a First Amendment right of access or of a common law right of access to a particular kind of document does not entitle[] the press and the public to

access in every case." *Rushford*, 846 F.2d at 253. Sealing (or redaction) may be warranted when "necessitated by a compelling government interest and narrowly tailored to serve that interest." *Id*. Such a justification exists here.

Sealing judicial records to protect constitutionally protected trade secrets and competitively sensitive business information is appropriate to prevent court files from becoming "sources of business information that might harm a litigant's competitive standing." *Nixon*, 435 U.S. at 599; *accord In re Knight Pub. Co.*, 743 F.2d at 235 (sealing court records permissible to prevent others from "gaining a business advantage" from materials filed with court). Indeed, this Court has ***already recognized*** the propriety of sealing certain of the confidential business information that PFI has filed under seal (Dkt. 37). The remaining information that PFI has filed under seal is of a similar nature, and has previously been filed under seal before the United States District Court for the District of Columbia. *Harjo*, No. 99-cv-1385 (D.D.C.) (Dkt. 111). Protecting this competitively sensitive business information justifies redaction of PFI's summary judgment brief and supporting declaration, as well as the sealing of supporting exhibits.

## CONCLUSION

For the reasons stated above, the Court should conditionally permit PFI to file these materials under seal, pending the Court's ruling of whether those sealed filings should be maintained.

Dated: February 23, 2015 Respectfully submitted,

/s/ *Craig C. Reilly*
Craig C. Reilly, Esq. (VSB # 20942)
craig.reilly@ccreillylaw.com
THE LAW OFFICE OF CRAIG C. REILLY
111 Oronoco Street
Alexandria, Virginia 22314
Tel: (703) 549-5354
Fax: (703) 549-5355

Robert L. Raskopf (*pro hac vice*)
robertraskopf@quinnemanuel.com
Todd Anten (*pro hac vice*)
toddanten@quinnemanuel.com
Claudia T. Bogdanos (*pro hac vice*)
claudiabogdanos@quinnemanuel.com
Jessica A. Rose (*pro hac vice*)
jessicarose@quinnemanuel.com
Jennifer D. Bishop (*pro hac vice*)
jenniferbishop@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
Tel: (212) 849-7000
Fax: (212) 849-7100

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on February 23, 2015, the foregoing pleading or paper was filed and served electronically by the Court's CM/ECF system upon all registered users in this action:

/s/ Craig C. Reilly
Craig C. Reilly, Esq. (VSB # 20942)
craig.reilly@ccreillylaw.com
THE LAW OFFICE OF CRAIG C. REILLY
111 Oronoco Street
Alexandria, Virginia 22314
Tel: (703) 549-5354
Fax: (703) 549-5355
*Counsel for Plaintiff*